

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00175-CR

———————————————

JOSEPH ELIJA CAMPBELL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1869668

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Joseph Elija Campbell appeals the trial court's judgments convicting him of continuous trafficking of persons for the purpose of promoting or engaging in prostitution, continuous trafficking of a minor, and aggravated promotion of prostitution. *See* Tex. Penal Code Ann. §§ 20A.02(a)(3)(A), (B), (a)(7), 20A.03(a), 43.04(a). On appeal, Campbell argues in three issues that the trial court erred by (1) improperly admitting certain evidence over his objections and preventing him from confronting a witness about how she had purportedly been threatened by a police detective before agreeing to testify, (2) denying his motion for directed verdict, and (3) overruling his objections to the jury charge. We affirm.

## I. BACKGROUND

Campbell ran a human-trafficking operation involving the recruitment of women to engage in sexual liaisons for money. He often used social media apps, such as Tinder, to lure women into his scheme. Posing as women who already worked for him, he would contact vulnerable females who were seeking friendship or romance. Typically, once a rapport had been established, the woman whose profile Campbell was using would suggest an in-person meeting where the victim would be "introduced" to Campbell.

Campbell would then pitch the women on his "sugar daddy" scheme as a way to make quick, easy cash by going on nonsexual dates with men. Because the victims

needed money, the arrangement was enticing to them. And because the victims needed a place to stay, they also moved in with Campbell.

Although Campbell pitched the sugar daddy scheme as nonsexual, he encouraged—and, if necessary, coerced—the women to perform "teases" to bring in more money. Teasing involved sexually touching a sugar daddy to get him to pay extra for penetrative sex. Campbell instructed the women on how to tease their clients and became angry if they did not do so. To keep the women compliant, Campbell would threaten them with physical violence or eviction. And in one extreme case, he withheld the drugs that he had been supplying to an addicted woman to force her to comply with his demands.

In March 2023, one of the women being trafficked by Campbell went to a north Fort Worth hospital for a sexual-assault examination. Detective Alan Branch of the Arlington Police Department was dispatched to the hospital to investigate the alleged sexual assault. The victim told Detective Branch about Campbell's sugar daddy operation and described how he had coerced her into meeting up with men to engage in sexual contact for money. Detective Branch obtained a search warrant for Campbell's apartment and vehicles; after a search was conducted, Campbell was arrested. After Campbell's arrest, the police continued to investigate, and other victims came forward.

Ultimately, a grand jury indicted Campbell for continuous trafficking of persons for the purpose of promoting or engaging in prostitution (Count One),

3

continuous trafficking of a minor (Count Two), and aggravated promotion of prostitution (Count Three). He pleaded not guilty, and a jury trial was held. After considering the evidence, the jury convicted him on all three counts and assessed punishments of life imprisonment on Count One, forty-five years' imprisonment on Count Two, and twenty-five years' imprisonment on Count Three. The trial court sentenced him accordingly. This appeal followed.

## II. DISCUSSION

### A. First Issue: Evidentiary and Witness-Confrontation Complaints

In his first issue, Campbell contends that the trial court erred by improperly admitting certain evidence over his objections and by preventing him from confronting a witness—one of the victims—about how she had purportedly been threatened by a police detective before agreeing to testify. But Campbell waived these complaints by failing to adequately brief them.

#### 1. Evidentiary Complaints

Within his first issue, Campbell raises three evidentiary complaints. First, he complains that the trial court abused its discretion by allowing a Tarrant County Criminal District Attorney's Office investigator to testify—over Campbell's hearsay and extraneous-offense objections—that "he was aware of . . . Campbell because other people in his unit had passed on to him information that [Campbell] was trafficking young girls" and that Campbell "had been on [law enforcement's] radar

4

since 2020." Second, he complains that the trial court allowed G.J.[1]—one of the victims—to testify that she had seen Campbell engage in nonconsensual sex with another victim "even though [Campbell] had never been charged with that crime" and to testify over Campbell's hearsay objection regarding "'what the new girls knew' about what sugar daddy meets entailed." Third, he complains that the trial court overruled his "speculation" objection to a victim's testimony that Campbell intentionally selected girls who "did not have a support system."

But as the State points out, Campbell does not cite any caselaw or evidentiary rules to support these complaints; indeed, he makes no effort to explain how or why the trial court's evidentiary rulings were incorrect. *See* Tex. R. App. P. 38.1(i) (providing that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Rather, Campbell merely notes that the complained-of testimony was admitted over his various objections. By failing to proffer any argument or authority to support his evidentiary complaints, Campbell has waived them due to inadequate briefing. *See id.*; *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (holding that appellant's point of error was "inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for her"); *Jessop v. State*, 368 S.W.3d 653, 681, 685 (Tex. App.—Austin 2012, no pet.) (holding that because

---

[1]Because G.J. was a minor at the time of the charged offenses, we refer to her by her initials. *See* Tex. R. App. P. 9.10(a)(3).

5

appellant failed to proffer any argument or authority with respect to his claims, he waived any error due to inadequate briefing); *Ochoa v. State*, 355 S.W.3d 48, 56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("An appellant waives an issue on appeal if he fails to adequately brief that issue by presenting supporting arguments and authorities."); *see also Parker v. State*, 727 S.W.3d 38, 64 (Tex. Crim. App. 2025) (overruling three of appellant's issues as inadequately briefed because she had failed to "explain why her unsworn motion with sworn affidavits satisfie[d] Article 29.08" of the Texas Code of Criminal Procedure and had instead "simply assert[ed] that it does").

### 2. Witness-Confrontation Complaint

Campbell also complains that the trial court sustained the State's hearsay objection and refused to allow him to confront one of the victims "concerning her bias" based on certain "threats" that Detective Branch had purportedly made against her to convince her to cooperate with the police regarding Campbell's prosecution. *See* U.S. Const. amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"); *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014) (noting that "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination[,]' because that is 'the principal means by which the believability of a witness and the truth of his testimony are tested'" (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S. Ct. 1105, 1110 (1974))).

6

But as with his evidentiary complaints, Campbell failed to adequately brief this issue. He cites no authority whatsoever and makes no effort to explain how or why the trial court's decision to sustain the State's hearsay objection was incorrect. *See* Tex. R. App. P. 38.1(i). Indeed, he does not even mention that the testimony was excluded on hearsay grounds. He simply notes that the trial court "refused to allow [him] to confront [the witness] concerning her bias" and that he made a bill of exception.[2] By failing to proffer any argument or authority to support his witness-confrontation complaint, Campbell has waived it due to inadequate briefing. *See id.*; *Lucio*, 351 S.W.3d at 896; *Jessop*, 368 S.W.3d at 681, 685; *Ochoa*, 355 S.W.3d at 56.

### 3. Disposition of First Issue

Because Campbell's first issue is inadequately briefed and presents nothing for our review, we overrule it in its entirety.[3]

---

[2]In his brief, Campbell incorrectly refers to the bill of exception as a "bill of review." *See Salazar v. State*, No. 07-06-0350-CR, 2008 WL 424154, at *3 n.3 (Tex. App.—Amarillo Feb. 15, 2008, no pet.) (mem. op., not designated for publication) ("The terms 'bill of review' and 'bill of exception' are often confused."); *compare In re Estate of Ulbrich*, No. 04-12-00514-CV, 2014 WL 129599, at *9 n.3 (Tex. App.—San Antonio Jan. 15, 2014, no pet.) (mem. op. on reh'g) (explaining that "[t]he primary purpose of a bill of exception is to include excluded evidence in the record so that an appellate court can determine whether the trial court erred in excluding it" (emphasis removed)), *with Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) ("A bill of review is an equitable proceeding[] brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for a new trial or direct appeal." (quoting *Mabon Ltd. v. Afri-Carib Enters.*, 369 S.W.3d 809, 812 (Tex. 2012))).

[3]Campbell asserts that, taken together, the complained-of evidentiary and witness-confrontation errors enumerated in his first issue had the cumulative effect of

**B. Second Issue: Motion for Directed Verdict**

In his second issue, Campbell contends that the trial court erred by denying his motion for directed verdict. We disagree.

**1. Relevant Background**

At the close of the State's case-in-chief, Campbell moved for a directed verdict on several grounds. Specifically, with respect to Count One, he moved for a directed verdict on the allegation that he had caused the victims to engage in prostitution or its promotion through "fraud." With respect to Count Two, he moved for a directed verdict on the allegation that he had trafficked G.J. by causing her to "engage in[] or become the victim of" the "promotion of child pornography." Finally, he generally moved for a directed verdict "on all counts on the basis that there ha[d] not been legally sufficient evidence presented" to support his conviction "for any and all elements of any of the offenses alleged in Counts One, Two, or Three." The trial court denied Campbell's motion for directed verdict on each of the stated grounds.

---

denying him his rights to due process and a fair trial under the Fourteenth Amendment. But, in and of itself, such a conclusory cumulative-harm allegation presents nothing for our review. *See Hollis v. State*, 509 S.W.2d 372, 375 (Tex. Crim. App. 1974); *Linney v. State*, 401 S.W.3d 764, 783 (Tex. App.—Houston [14th Dist.]), *pet. ref'd*, 413 S.W.3d 766 (Tex. Crim. App. 2013). Further, because Campbell waived all of the complained-of errors by failing to adequately brief them, there is no error to cumulate. *See Jeanty v. State*, No. 02-21-00159-CR, 2023 WL 3114342, at *19 (Tex. App.—Fort Worth Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication) (overruling cumulative-error complaint because all of appellant's other complaints had been overruled and there was thus no error to cumulate); *Abel v. State*, No. 02-18-00051-CR, 2020 WL 5048078, at *36 (Tex. App.—Fort Worth Aug. 27, 2020, no pet.) (per curiam) (mem. op., not designated for publication) (same).

**2. Analysis**

The indictment alleged multiple theories of culpability for Counts One and Two. Because a trial court cannot grant a directed verdict as to an individual theory of culpability within a broader charged offense, Campbell's requests for a directed verdict as to specific manner-and-means allegations within Counts One and Two were improper. *See Ex parte Crenshaw*, 25 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Neither party cites any authority to support a trial court's granting a 'directed verdict' on only one theory of [culpability]. We are aware of none."). Accordingly, the trial court did not err by denying Campbell's motion for directed verdict as to those specific allegations. *See id.*

As for Campbell's broad evidentiary-sufficiency challenge pertaining to "any and all elements" of Counts One, Two, and Three, he failed to adequately brief this issue on appeal. The sum total of Campbell's argument on this point is as follows: "[T]he evidence as to each count did not support [the] conviction." He does not cite any authority or direct us to any portions of the record to support his broad evidentiary-sufficiency complaint. *See* Tex. R. App. P. 38.1(i); *see also Fuller v. State*, No. 07-23-00232-CR, 2024 WL 1664783, at *4 (Tex. App.—Amarillo Apr. 17, 2024, pet. ref'd) (mem. op., not designated for publication) ("In order to properly brief a challenge to the sufficiency of the evidence, the brief must have a summary of the testimony or other evidence relevant to the element of the offense that is challenged, accompanied by appropriate citations to authorities and the record."). Accordingly, he

9

has waived this complaint due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Lucio*, 351 S.W.3d at 896; *Jessop*, 368 S.W.3d at 681, 685; *Ochoa*, 355 S.W.3d at 56; *see also Fuller*, 2024 WL 1664783, at *4 (holding that evidentiary-sufficiency complaint was "inadequately briefed and present[ed] nothing for . . . review" because "the evidence [was] not discussed, there [were] no citations to the record, and no argument [was] presented pointing out how the evidence [was] insufficient or what element of the offense [was] deemed as insufficiently proven"); *Miller v. State*, 387 S.W.3d 873, 878 (Tex. App.—Amarillo 2012, no pet.) (overruling legal-sufficiency complaint as inadequately briefed and explaining that "[t]he failure to discuss the evidence that support[ed] appellant's complaints, [to] present a clear and concise argument, or [to] properly cite applicable legal authority result[ed] in nothing being presented for review"); *McIntosh v. State*, 307 S.W.3d 360, 365 (Tex. App.—San Antonio 2009, pets. ref'd) ("Because [appellant] has not provided argument or authority to support his contention that the evidence is legally . . . insufficient to support the verdict . . . , the issue is inadequately briefed.").

We overrule Campbell's second issue.

## C. Third Issue: Jury Charge

In his third issue, Campbell contends that the trial court erred by overruling his objections to the jury charge. Specifically, he argues that the trial court erred by including the definition of "intoxication" found in Chapter 49 of the Texas Penal

10

Code in the charge and by failing to require the State to elect a specific culpability theory on which to proceed under Count Three.[4] We disagree.

### 1. Standard of Review and Applicable Law

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Preservation of charge error does not become an issue until we assess harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* "[J]ury charge error requires reversal when the defendant has properly objected to the charge and we find 'some harm' to his rights." *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). "When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* at 743–44 (quoting *Almanza*, 686 S.W.2d at 171). "Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id.* at 744.

---

[4]In his brief's "Summary of the Argument" section, Campbell references a third jury-charge complaint, namely, that the trial court erred by "including the element of fraud in Count One because there was no evidence that [Campbell] engaged in any fraud in connection with the alleged continuous[-]trafficking allegation." But Campbell did not include this argument among his enumerated issues, nor did he so much as mention it in his brief's argument section. Thus, to the extent that Campbell sought to raise this issue, he has waived it due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Lucio*, 351 S.W.3d at 896; *Jessop*, 368 S.W.3d at 681, 685; *Ochoa*, 355 S.W.3d at 56.

### 2. Definition of Intoxication

Campbell contends that the trial court erred by including the definition of intoxication found in Chapter 49 of the Texas Penal Code in the jury charge. According to Campbell, because this statutory definition applies only to offenses committed under Chapter 49 and because none of his charged offenses arose under that chapter, the statutory definition should not have been included; instead, the charge should have instructed the jury to "appl[y] the common understanding of the term intoxication in its deliberations."

But even assuming that the trial court erred by including the statutory definition in the charge and that Campbell preserved his complaint, any such error was harmless. Whether Campbell coerced his victims through intoxication was not a contested issue at trial. *See Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985) (noting that one of the considerations in determining whether a charge error is harmful is whether it related to a contested issue). Indeed, in its closing argument, the State did not argue that Campbell coerced any of the victims through intoxication. *Cf. Johnson v. State*, No. 02-24-00439-CR, 2025 WL 3301068, at *3 (Tex. App.—Fort Worth Nov. 26, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that the record did not show that appellant convicted of evading arrest or detention had "suffered any harm from the trial court's failure to include the statutory definition of 'knowingly' in the charge" because, inter alia, "[i]n his opening statement and closing argument, [appellant's] counsel did not assert that [appellant] had been

12

unaware either that [the pursuing officers] were police officers or that they had been attempting to arrest or detain him"). And perhaps most significantly, Campbell's trial counsel acknowledged at the charge conference that the objected-to statutory definition was actually narrower than the term's common understanding, meaning that its inclusion in the charge actually benefited Campbell. *See Young v. State*, 573 S.W.2d 817, 819 (Tex. Crim. App. [Panel Op.] 1978) (holding that the trial court's failure to include a statutory definition that was "more expansive than the common usage of the term" could not "be characterized as injurious in any manner to the rights of the appellant"); *Shelley v. State*, No. 01-86-00821-CR, 1987 WL 14554, at *3 (Tex. App.—Houston [1st Dist.] July 23, 1987, no pet.) (not designated for publication) ("The common definition is narrower than the statutory definition, and thus, the absence of definition [in the jury charge] benefited appellant."). Thus, the inclusion of the statutory definition of intoxication in the jury charge "was not injurious to [Campbell's] rights." *See Shelley*, 1987 WL 14554, at *3.

### 3. Election of Specific Culpability Theory

Count Three of the indictment alleged that Campbell "knowingly own[ed], invest[ed] in, finance[d], control[led], supervise[d], or manage[d] a prostitution enterprise that used at least two prostitutes." *See* Tex. Penal Code Ann. § 43.04(a). Campbell contends that the trial court erred by failing to require the State to specify which of these discrete manner-and-means theories it was "asserting in regard to Count Three." But the only case that Campbell cites to support this contention—

*Williams v. State*—directly refutes it. *See* 685 S.W.3d 110, 111 (Tex. Crim. App. 2024) ("The State is not required to elect between alternative statutory methods of committing an offense alleged in an indictment."). Bound by this precedent, we conclude that the trial court did not err by declining to require the State to elect between the alternative methods of committing the aggravated-promotion-of-prostitution offense alleged in Count Three. *See id.* at 111–15.

### 4. Disposition of Third Issue

Having determined that any error in the inclusion of the statutory definition of intoxication in the jury charge was harmless and that the trial court did not err by failing to require the State to elect between the alternative methods of committing the aggravated-promotion-of-prostitution offense alleged in Count Three, we overrule Campbell's third issue.

## III. CONCLUSION

Having overruled all of Campbell's issues, we affirm the trial court's judgments.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 26, 2026